Lee, J.
Of the questions raised in this case the first to be considered is that of the jurisdiction of the Court of chancery.
The case is one essentially for an account. It involves the transactions of the deputy as the acting administrator of three several estates. The settlement of the accounts was of course to be made upon the same principles which would govern if the settlement were made in a suit by creditors or distributees against the sheriff himself as administrator, because the deputy and his sureties would be liable to the sheriff in the same amount for which he was liable to those entitled to call him to account. And that the sheriff might have had a remedy by an action on the bond should not in this case exclude the equity jurisdiction. The remedy at law could not be as ample and complete as in equity. The accounts could not be as well settled by a jury as by a commissioner in chancery; and although there had been an ex parte settlement made in each case, yet it might still be shown upon a settlement under the order of the court, that the amounts really due and for which the high sheriff would be liable, were greater or less than those ascertained upon those ex parte settlements. In point of fact the court did forbear at the time of its decree to charge the parties with a large portion of the amount appearing to be due to the estate of John Bell upon a suggestion by the deputy that he had never collected the bond of Mary Bell which constituted a part of the assets supposed to have come to his hands. Moreover it might turn out (as indeed, it will appear in the sequel, it did turn out), that whilst the deputy might be liable upon all three accounts as claimed, the sureties might be liable for part only. But the law court could of course *220 only give one j udgment in the case and that for the amount due from those jointly bound; whilst the court of equity could adjust the several liabilities and decree against the deputy separately as well as against him and his sureties jointly, according to the ascertained liabilities; and thus to a certain extent multiplicity of suits by the sheriff for the short comings of his deputy would be avoided.
In these views I think the jurisdiction of the court is sufficiently vindicated.
But it is said that if the court could entertain the bill, yet that upon Nelson’s death the suit was improperly revived in the name of his administratrix, and could only have been properly revived in the names of the administrators de bonis non of the several decedents Barrow, Bell and Parker. This suit however was not brought by Nelson as administrator of those parties, but in his own right, individually. It was not to recover specific chattels belonging to those estates nor assets still in the hands of the acting administrator and unconverted, but it was to obtain indemnity from the deputy and his sureties against the default of the former by holding him to an account of his transactions as acting administrator for which the sheriff was responsible to those interested in the several estates. I think it clear therefore that the suit was well revived in the name of Nelson’s administratrix.
Another ground of error assigned is that a large portion of the moneys for which the sureties were held responsible was received by the deputy after the expiration of the year during which they became bound for his acts, and it is urged that they should not be charged with moneys received by him during the second year of Nelson’s shrievalty.
It appears that the assets of the estate of the decedent Bell that came to the hands of the deputy sheriff, were received by him in the year 1837 which was the *221 first year of Nelson’s shrievalty; hut that those of the estates of Barrow and Parker did not come to his hands until after the commencement of Nelson’s second term. But the estate of Barrow was committed to the sheriff during the first year of Nelson’s shrievalty and whilst Tyler was his deputy for whom as such .the sureties had become bound to the sheriff. It was of course the duty of the sheriff to complete the administration whether before or after the termination of his office; and the deputy who had undertaken the duty of the acting administrator within the year was authorized and it was his duty to do what the sheriff himself could do after the expiration of the term, to bring the affairs of the estate to a close. The sheriff and his sureties are answerable for the deputy’s administration as well before as after the expiration of his office, just as they would be for the acts of a deputy in relation to an execution levied by him during his term of office. Dabney’s adm’r v. Smith, 5 Leigh 13; Douglas’ ex’or v. Stump, Id. 392. And as the sheriff and his sureties would thus be answerable for the deputy’s acts after the year, it would seem very clear that the sureties of the latter would be responsible for the same to the sheriff upon their bond. Miller v. Jones, 9 Grratt. 584, 610.
But although in this view the sureties of Tyler must be held responsible for the assets of the estates of Bell and Barrow that came to his hands whether before or after the expiration of the term commencing in 1837, I can see no ground on which they can be held liable for the assets of the estate of Parker which was not committed to Nelson as sheriff to be administered until after the expiration of the term for which they had become bound. The appointment of the sheriff was for one year and the term of the deputy under his appointment would not extend beyond that of his *222 principal. The words therefore of the bond descriptive of the term for which the sureties of the deputy had become responsible for his acts to the sheriff, to wit “ during the continuance in office of the said Nathaniel Nelson” must have reference to the actual duration of the office under which the bond was given and which was for the year beginning in March 1837. If this could be otherwise at all doubtful, it must now be regarded as settled by the decisions of this court. Commonwealth v. Fairfax, 4 H. & M. 208; Munford v. Rice, 6 Munf. 81. In the former case it was held that upon the construction of the act, the sheriff was to be annually appointed and commissioned, and should annually give bond conditioned for the faithful discharge of the duties of the office; and accordingly that where a sheriff had been commissioned for one year only, and had acted the second year without a new nomination and commission and without having renewed his bond, the sureties in his bond were not liable for taxes collected by him during the second year, notwithstanding the condition of the bond was for the faithful performance of his duties during his continuance in office. In Munford v. Rice it was held that the sureties of a deputy sheriff who had given bond (as in the case before us) to indemnify the sheriff were only liable for the transactions of one year and not for those of a second year during which the deputy had acted as such although the bond was conditioned for the faithful performance of his duties “ during his continuance in office;” the court distinguishing this case from that of Royster v. Leake, 2 Munf. 280, in which a bond dated 15th November 1802 and conditioned for the faithful performance of the duties of the deputy during his continuance in office until November court 1804, was upon its particular phraseology held binding upon the sureties for the year ending at *223 November court 1804 as well as the previous year, and until the winding up of the business lawfully committed to him as deputy.
This case falls clearly within the principles established by these cases and in its material facts is not to be distinguished from the case of Munford v. Rice.
As another ground of error the appellant insists that Tyler the deputy, had no authority to receive and collect bonds payable to the former administrators of Bell and Parker and therefore that his ■ sureties were not liable for the amounts thus received.
This question is of no importance so far as it affects the estate of Parker, because as we have seen, the sureties are not to be charged with any thing received by Tyler on account of that estate, but it is important as it respects the estate of Bell because all the assets of that estate that came to Tyler’s hands consisted of bonds turned over to him by the administratrix of Ladd the former administrator.
I think the position contended for by the counsel on this head cannot be maintained. It is true that an administrator de bonis non cannot sue the representative of a former executor or administrator either at law or in equity, for assets wasted or converted by him ; such waste or conversion is an administration of the assets and the suit to recover them must be brought by creditor’s legatees or distributees. Wernick's adm'r v. McMurdo, 5 Rand 51. But all the assets not altered or converted by the former executor or administrator, are to be regarded as unadministered, and these pass to the administrator de bonis non and not to the representative of the first executor or administrator. 4 Bouvier’s Bac. Ab. (ed. 1846) title “ Executors and Administrators,” B. 2, p. 24; Wankford v. Wankford, 1 Salk. R. 299, 306; Rutland v. Rutland,, 2 P. Wms. 210; Attorney General v. Hooker, 2 P. Wms. 338. And dioses in action may pass as unadministered assets to the *224 administrator de bonis non. Thus if a bill of exchange be endorsed generally and delivered to an administrator for a debt due the estate of his decedent, and the administrator die after the maturity of the bill, the bill vests in the administrator de bonis non of the first decedent, and he may sue thereon. Catherwood v. Chabaud,
1 Barn. & Cress. 150, 8 Eng. C. L. R. 45. So a promise to an administrator will be a sufficient foundation for an action on behalf of the administrator de bonis non. Hirst's adm’r v. Smith, 7. T. R. 182. And upon a judgment recovered by an executor as such, the administrator de bonis non of the first decedent may maintain debt on a scire facias. Dykes & Co. v. Woodhouse's adm'r, 3 Rand. 287. Sometimes too where there might be said to have been a conversion at law it will not be so regarded in equity: as if the first administrator were to invest money of his intestate in the public funds or to transfer it from one fund to another. This as it showed no intention to make the money his own, would not be considered, in equity a conversion. Per Carr, J., Wernick v. McMurdo, 5 Rand. 51, 57. And'bonds taken by an executor or administrator for property belonging to the estate of his decedent and lawfully sold by him and remaining uncollected at the time of the death of such executor or administrator might be claimed in equity by the administrator de bonis non. Per Green, J., Ibid. 90. And this doctrine has been affirmed.in a recent case in which it was held that where it is not necessary that the bonds should be retained by the representative of the first executor or administrator for the indemnity of the estate of his decedent, they might be confided as unadministered assets to the administrator de bonis non. Clarke v. Wells’ adm’r, 6 Gratt. 475.
Now the bonds turned over to Tyler as the acting administrator de bonis non of Bell were taken payable to Ladd in his character of administrator of Bell; they *225 were it is to be presumed for the proceeds of property of the estate properly sold; they were kept separate and treated as the assets of that estate; it was not necessary they should be retained by the administratrix of Ladd to indemnify her estate, and she accordingly turned them over to Tyler as administrator de bonis non to be administered by him. In such a case Judge Green would seem to be of opinion that such a delivery of the assets would discharge the estate of the deceased executor or administrator from any claim by creditors, legatees or distributees for the assets so turned over. Wernick v. McMurdo, 5 Rand. 51, 94. And where an administrator de 'bonis non has the right to recover unadministered assets of the first executor or administrator and actually receives them, certainly the payment of them would be good and would protect the estate of such first executor or administrator from any further liability for them.
The question discussed in the cases above referred to was as to the right of the administrator de bonis non to recover by suit assets in the hands of the previous executor or administrator. But if the assets have been voluntarily paid over to the administrator de bonis non and received by him colore officii as assets of the estate of his decedent, there can be no doubt of bis liability to account for them. The intention to convert or not to convert is regarded as a criterion by which to determine the fact of conversion, and payment by the representative of the first executor or administrator to the administrator de bonis non, is to be taken as an admission that the assets had not been converted. Per Judge Green as above cited, p. 51, 94. And the question here is not whether the administrator de bonis non could recover of Ladd’s administratrix, nor whether the latter was discharged by turning over the bonds to Tyler, but whether Tyler and his sureties are. liable for the assets thus received. In Mosby's *226 adm’r v. Mosby’s adm’r, 9 Gratt. 584, administration de bonis non of an estate was committed to a sheriff, and his deputy the acting administrator received the rents and profits of the real estate of the decedent; and it was held that whether the high sheriff was authorized to receive the rents and profits of the land or not, yet as the estate had been, committed to him and his deputy had taken possession of the land and received the rents and profits, the high sheriff was bound to account for them ; and that the deputy and his sureties were liable to the high sheriff for all rents and profits for which he was liable to those interested in the estate ; the liability of the obligors in the deputy’s bond as well sureties as principal, says Judge Moncure, “ seems to follow as a necessary consequence.” Ibid. 584, 610.
The case just cited I think covers in principle the whole ground of the present case, and more, for I think the reasons for holding the sureties responsible in this case are even stronger than those in the former.
Another ground of error assigned is that there is no proof that the bonds received from the former administrator had been paid to or collected by Tyler. The bonds were turned over to him by the administratrix of Ladd in July 1837 and were all due on the 1st of August in that year. They were delivered to him for the purpose of being collected as assets of the estate of Bell and it was his duty to proceed to collect them without unnecessary delay. He settled the account of the administration on the 27th July 1843, in which he charged the administrator with the whole amount of these bonds as of the day on which they fell due. He made no suggestion that any of them had not been or could not be collected. He never at any time surrendered or offered to surrender any of them to Nelson, nor did he produce them before the commissioner when he settled the account in 1843 or afterwards under the *227 order of the court in this cause in 1846; and when called on by the commissioner when he was about to make the last settlement, he stated that he had no other settlement to make than the one of record and was willing it should stand as it was. And when the decree was about to be pronounced, he made no objection to being charged with any of these bonds except the one on Mary Bell which he then for the first time alleged lie had not collected. That bond was accordingly reserved by the court by its decree. I think the proof that he had collected all the rest was most satisfactory if not conclusive.
The last objection to be noticed is that there is neither allegation nor proof that any recovery had been had of the sheriff", and therefore he had no right to recover of the sureties of the deputy. It is true it is not alleged that any judgment or decree had been rendered against the sheriff, nor that he had paid the amount due. Nor was it necessary it should be. It was sufficient if it was alleged and proved that by the transactions of the deputy as the acting administrator, the high sheriff had been rendered liable to those interested in the estates. That this is sufficiently done seems clear. It is alleged and proved that Tyler settled the accounts of the estates as required by law, in obedience to the orders of the County court of Charles City, and those settlements were returned to the court and ordered to be recorded as the law directs. They showed the balances due from Nelson the administrator and rendered him liable for the same to those entitled to the assets. That the true amounts might have been shown by proper proceedings, to be greater or less than those ascertained by the settlements did not impair their legal effect. Unless and until so shown, those amounts were to be taken a,s they stood, and the settlements constituted a sufficient basis of recovery by those entitled against the high sheriff, and by *228 him against the deputy and his sureties. That it is not necessary the sheriff should have actually paid the amount for which he is liable in such a case sufficiently appears from the ease of Miller v. Jones, 9 G-ratt. 584, 609, in which the sheriff was permitted to maintain his action against the deputy and his sureties although he had not paid any part of the amount for which he had been rendered liable by the default of the deputy. The condition of the bond in that case as stated by Judge Moncure in his opinion, was perhaps somewhat different from that of the bond in the present case. Still I apprehend that as Tyler had by his acts, as deputy, rendered Nelson liable to a recovery of the amounts appearing due on the accounts stated, there was a sufficient breach of the bond to sustain his right to seek the indemnity which it was intended to provide.
I think therefore there was no error in the decree except in charging the sureties of Tyler with the amount ascertained to be due to the estate of Parker ; and am of opinion to reverse so much as makes them liable for that amount, and in lieu thereof, to render a decree for the same against the deputy, John 0. Tyler alone, and in all other particulars to affirm the decree.
The other judges concurred in the opinion of Lee, J.
Affirmed in part, and reversed in part.